# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **WYANDOTTE NATION,** | ) | |
| | ) | **Case No. 11-2656-JAR-DJW** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KENNETH L. SALAZAR, in his official** | ) | |
| **capacity as Secretary of the United States** | ) | |
| **Department of the Interior,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **STATE OF KANSAS, ex rel.** | ) | |
| **DEREK SCHMIDT, Attorney General,** | ) | |
| | ) | |
| **Intervening Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND OPINION

Plaintiff Wyandotte Nation, a federally recognized Indian tribe ("the Nation"), filed this lawsuit against Kenneth Salazar, Secretary of the United States Department of the Interior ("the Secretary"), seeking an order from this Court compelling the Secretary to comply with his mandatory duty to accept title to certain land and hold it in trust for the Nation's benefit, as specifically required by Public Law 98-602, 98 Stat. 3149 (1984).  The State of Kansas ("the State") was permitted to intervene as of right under Fed. R. Civ. P. 24(a) (Doc. 41) and in its Answer, brought counterclaims against the Nation and cross-claims against Defendant Secretary. This matter is before the Court on the Nation and the Secretary's Motions to Dismiss the State's claims for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) (Docs. 45,47).  The Secretary and the State have supplemented their submissions, per the Order of this Court (Doc.

53).  For the reasons explained in detail below, the Court grants the motions to dismiss.

I.      **Background**

On July 26, 2011, the Nation initiated this action in the United States District Court for the District of Columbia, challenging the Secretary's failure to accept title to a tract of land known as the Park City Land into a trust created for the Nation's benefit as required by the Land Claim Settlement Act ("PL 602").[1]  Highly summarized, PL 602 provides a mechanism to satisfy certain judgments entered by the Indian Claims Commission in favor of the Nation against the United States, and, *inter alia*, mandated that a "sum of $100,000 . . . shall be used for the purchase of real property which shall be held in trust by the Secretary [of the Interior] for the benefit of [the] Tribe" ("PL 602 Funds").  Specifically, the Nation alleges that in November 1992, it purchased a tract of land in Park City, Kansas, with PL 602 Funds and, in January 2003, submitted an application requesting the Secretary take the Park City Land into trust pursuant to PL 602.  The Secretary never took any action on the request.

In 1995, the Nation alleges it purchased a second tract of land with PL 602 Funds in Kansas City, Kansas ("Shriner Tract") and requested the Secretary accept that land into trust.  In 1996, the Secretary accepted the Shriner Tract into trust and approved gaming activities on that property under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.* ("IGRA").  After approximately five years of litigation, the Tenth Circuit Court of Appeals concluded that the Secretary acted arbitrarily in determining whether only PL 602 Funds were used to purchase the Shriner Tract, as well as erred in approving gaming activities on the land.[2]  The Tenth Circuit

---

[1]Pub. L. No. 98-602.

[2]*See Sac & Fox Nation of Mo. v. Babbitt*, 240 F.3d 1250, 1253 (10th Cir. 2001).

then remanded the matter to the Secretary for reconsideration of the Nation's original request regarding the Shriner Tract.

On remand, the Secretary determined that the Shriner Tract was purchased with PL 602 Funds and affirmed its decision to accept the property in trust, and the Nation began operating gaming facilities on the site.  From 2002 until 2010, the Nation, the State of Kansas and other Indian Tribes have engaged in extensive litigation surrounding the Shriner Tract and the Nation's ability to open a gaming facility on the land.  On April 13, 2006, during the litigation regarding the Shriner Tract, the Nation resubmitted its application to have the Park City Land taken into trust.  The Nation intends to operate a gaming facility on the Park City Land, but the Secretary has not yet acted on the Nation's renewed application.

In this lawsuit, the Nation alleges that "despite the Nation's repeated requests and its undeniable need for prompt action, the Secretary has refused to act on the Park City Land trust acquisition, to provide any reasonable explanation for his delay, or even to specify a date by which he will act."[3]  Consequently, the Nation seeks in Count I a writ of mandamus pursuant to 28 U.S.C. § 1361 to compel the Secretary to accept trust title to the Park City Land; a finding in Count II that the Secretary violated the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* ("APA"); and in Count III, a determination that the Secretary breached trust obligations owed to the Nation.[4]

In September 2011, the Secretary moved to transfer this case to this Court and the State filed a Motion to Intervene.  On November 22, 2011, the Secretary's Motion to transfer was

---

[3]Doc. 1, ¶ 31.

[4]*Id*. at ¶¶ 33-50.

granted.  Subsequently, over the Nation's objection, Magistrate Judge Waxse granted the State's

Motion to Intervene as a matter of right.  The State then filed an Answer and asserted

counterclaims against the Nation and cross-claims against the Secretary.[5]  The State seeks the

opposite relief of that sought by the Nation: declaratory relief and an injunction prohibiting the

Secretary from acquiring the Park City Land in trust.  The State asserts three claims: Counts I

and II seek a declaratory judgment for unlawful exercise of trust authority under P.L. 98-602,

and unlawful exercise of trust authority under 25 U.S.C. § 465; Count III seeks to enjoin the

Secretary from taking the Park City Land into trust.  The State asserts this Court has jurisdiction

over its counterclaims and cross-claims pursuant to 28 U.S.C. §§ 1331 and 1362 because its

claims arise "under 25 U.S.C. § 465, 25 C.F.R. § 151.12, 25 U.S.C. § 2719, and Public Law 98-

602."  The State further asserts this "action presents an actual case or controversy pursuant to the

Declaratory Judgment Act, 28 U.S.C. § 2201."

## II.      Rule 12(b)(1) Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of the case

where the court lacks subject matter jurisdiction.  Dismissal for lack of subject matter

jurisdiction comes in two forms: (1) facial attacks; and (2) factual attacks.[6]  When attacked

facially, as in this case, the movant is challenging the sufficiency of the complaint, requiring a

court to accept as true all the allegations in the complaint.[7]  Federal courts are courts of limited

---

[5]Doc. 44.  The parties agreed that any jurisdictional issues with respect to the State's counterclaims and cross-claims should be resolved prior to the Court addressing the merits of the Nation's Complaint, and the Court vacated the prior agreed summary judgment briefing schedule.  Doc. 43.

[6]*Paper, Allied-Indus., Chem. & Energy Workers Intern. Union v. Cont'l Carbon Co.*, 428 F.3d 1285 1292 (10th Cir. 2005).

[7]*Id.*

4

jurisdiction that may exercise only those powers authorized by Constitution and statute.[8]  A plaintiff is responsible for showing the court by a preponderance of the evidence that jurisdiction is proper.[9]  Mere allegations of jurisdiction are not enough.[10]  Since federal courts are courts of limited jurisdiction, there is a strong presumption against federal jurisdiction.[11]  A court lacking subject matter jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that such jurisdiction is lacking."[12]

The Secretary also moves for dismissal because the State lacks standing.[13]  Because a party's standing implicates subject matter jurisdiction, the issue is also analyzed under Rule 12(b)(1).[14]  The concept of constitutional standing is derived from the case or controversy requirement of Article III of the Constitution, and requires a plaintiff to show it has suffered an injury in fact that is fairly traceable to the challenged action of defendants and is likely to be redressed by a favorable decision.[15]  The elements of constitutional standing are not mere pleading requirements, but rather are an indispensable part of plaintiffs' case.[16]  Thus, "each

---

[8]28 U.S.C. § 1331; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[9]*United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002).

[10]*Id.* at 798.

[11]*Penteco Corp. Ltd. P'ship 1985A v. Union Gas Syst., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).

[12]*Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citations omitted).

[13]Although the parties briefed the issue in their submissions on  the State's Motion to Intervene, Judge Waxse did not consider standing because it is not a prerequisite for intervention in the Tenth Circuit, "so long as another party with constitutional standing on the same side as the intervenor remains in the case. *See* Doc. 41 at 16-17 (citing *San Juan Cnty., Utah v. United States,* 503 F.3d 1163, 1172 (10th Cir.2007) (en banc)).

[14]*See San Juan Cnty., Utah,* 420 F.3d 1197, 1203 (10th Cir. 2005).

[15]*See Robey v. Shapiro, Marianos & Cejda, L.L.C.,* 434 F.3d 1208, 1210–11 (10th Cir.2006).

[16]*Utah v. Babbitt,* 137 F.3d at 1204 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)).

element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."[17]   On a motion to dismiss, the Court must accept as true all material allegations of the complaint, and must construe the complaint in favor of plaintiff.[18]   An injury in fact is one that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.[19]   For purposes of alleging an injury in fact, general factual allegations of injury resulting from defendant's conduct will suffice because such allegations are presumed to "embrace those specific facts that are necessary to support the claim."[20]

## III.   Discussion

### A.   Claims Against the Wyandotte Nation

The Nation argues that it is immune from the State's counterclaims under the doctrine of tribal sovereign immunity and, alternatively, that the question of whether the Park City Land can be taken into trust under PL 602 is not ripe and thus the counterclaims should be dismissed.   The State counters that the Nation waived its sovereign immunity by filing this lawsuit in federal court and, even if it has not, the State's counterclaims should be designated as defenses under Fed. R. Civ. P. 8(c)(2).   The Court addresses each argument in turn.

***Tribal Sovereign Immunity***

The Nation is a federally-recognized Indian Tribe.   "Indian tribes are neither states, nor

---

[17]*Defenders of Wildlife,* 504 U.S. at 561.

[18]*Babbitt,* 137 F.3d at 1204 (citing *Warth v. Seldin,* 422 U.S. 490 (1975)).

[19]*See Schmidt v. Cline,* 127 F.Supp.2d 1169, 1172 (D.Kan.2000) (citing *Bear Lodge Multiple Use Ass'n v. Babbitt,* 175 F.3d 814, 821 (10th Cir.1999)).

[20]*Defenders of Wildlife,* 504 U.S. at 561 (quotation omitted).

part of the federal government, nor subdivisions of either.  Rather, they are sovereign political entities possessed of sovereign authority not derived from the United States, which they predate."[21]  As a dependent sovereign entity, an Indian tribe is not subject to suit in a federal or state court unless the tribe's sovereign immunity has been either abrogated by Congress or waived by the tribe.[22]  In either case, the waiver or abrogation of sovereign immunity "must be unequivocally expressed" rather than implied.  Further, "a tribe's participation in litigation does not constitute consent to counterclaims asserted by the defendants in those actions."[23]

The State acknowledges that Congress has not abrogated the Nation's sovereign immunity but urges that waiver occurred when the Nation filed this lawsuit against the Secretary. Although not specifically identified as such, the State relies on the doctrine of equitable recoupment, which can operate as a limited waiver of tribal sovereign immunity; this doctrine recognizes that by bringing a claim, a state or tribe necessarily waives immunity for matters "arising out of the same transaction or occurrence" that is the subject matter of the suit, to the extent the counterclaims do not seek relief "different in kind or nature" or "exceeding the amount" of the relief sought by the state or tribe.[24]  The Tenth Circuit has adopted a three-prong test to determine whether a defendant's claim constitutes a claim of recoupment: the claim must (1) arise from the same transaction or occurrence as the Nation's suit; (2) seek relief for the same

---

[21]*Nanomantube v. Kickapoo Tribe in Kan.*, 631 F.3d 1150, 1151-52 (10th Cir. 2011) (quoting *NLRB v. Pueblo of San Juan*, 276 F.3d 1186, 1192 (10th Cir. 2002) (en banc)).

[22]*Id.* (citing *Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 100, 1009 (10th Cir. 2007).

[23]*McClendon v. United States*, 885 F.2d 627, 629 (1989).

[24]*Wyandotte Nation v. City of Kansas City, Kan.*, 200 F. Supp. 2d 1279, 1285 (D. Kan. 2000) (quoting *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1344 (10th Cir. 1982)).

kind or nature of the Nation's suit; and (3) seek an amount not in excess of the Nation's claim.[25]
The State contends that its counterclaims fit squarely within that rule because, at its core, the
Nation's claim is that the law and facts compel the conclusion that the Secretary was required to
take the Park City Land into trust pursuant to PL 602.  The State argues that the Nation has thus
waived its tribal immunity as to the State's counterclaims, which arise from the same issue, seek
the same determination of whether the Secretary is obligated to take the land into trust, and seek
an amount not in excess of the Nation's claims.

In all of the cases cited by the State, however, the parties permitted to maintain
counterclaims against the plaintiff tribes were defendants in the underlying matter.[26]  In this case,
of course, the State was not named by the Nation as a defendant; rather, the Secretary is named
as the sole defendant in the underlying mandamus action.  The State was permitted to intervene
in the case over the objection of the Nation and seeks a judgment against the Nation for
"unlawful exercise of trust authority."  To find that the Nation waived its sovereign immunity
against the State under these circumstances would require a determination of implied waiver.  A
waiver of sovereign immunity cannot be implied, however, but must be express.[27]  Accordingly,
the Court finds that the Nation has not expressly waived its sovereign immunity to suit over this

---

[25]*Berrey v. Asarco, Inc.*, 439 F.3d 636, 645 (10th Cir. 2006).

[26]*See Berrey*, 439 F.3d at 644-45 (finding waiver where named defendants in claim brought by tribe
asserting tenants under a mining lease caused damage to the tribe's land counterclaimed for contribution and
indemnity); *Wyandotte Nation*, 200 F. Supp. 2d at 1284-85 (permitting named defendant's counterclaim against tribe
for declaratory judgment in quiet title suit brought by tribe); *Oneida Tribe of Indians of Wisc. v. Village of Hobart*,
500 F. Supp. 2d 1143, 1148-49 (E.D. Wisc. 2007) (permitting named defendant's counterclaim against tribe seeking
order directing tribe to pay all unpaid taxes and assessments in action brought by tribe seeking declaratory relief
exempting land from state taxes and assessments and a refund of previous assessments paid by the tribe).

[27]*McClendon v. United States*, 885 F.2d 627, 629 (1989) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S.
49, 58 (1978)).

subject matter by this third party intervenor.

### *Rule 8(c)(2)*

Alternatively, the State asks this Court to designate its counterclaims as defenses to the Nation's claim that the Secretary has the mandatory obligation to take the Park City Land into trust. Fed. R. Civ. P. 8(c)(1) generally addresses affirmative defenses; subsection (c)(2) specifically adddresses mistaken designation of such defenses, stating, "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."[28]   Neither counterclaim is an affirmative defense under Rule 8(c). Accordingly, the State's request is denied, and the Nation's motion to dismiss is granted.

### B.     Claims Against the Secretary of the Interior

The Secretary argues that the State's cross-claim should be dismissed because it has failed to identify an applicable waiver of sovereign immunity or establish that it has standing under Article III of the Constitution, and thus this Court lacks subject matter jurisdiction. Alternatively, the Secretary argues that the State's cross-claims lack ripeness, fail to state a claim and request relief that is contrary to prudential limitations on judicial review of on-going agency actions. The State contends that this Court has supplemental jurisdiction over the cross-claims under 28 U.S.C. § 1367.

### *Sovereign Immunity*

In a suit against the United States or when one of its agencies is a defendant, a waiver of

---

[28]Fed. R. Civ. P. 8(c)(2).

sovereign immunity is a prerequisite to subject matter jurisdiction.[29]  Any waiver of sovereign

immunity must be express.[30]  Where the party asserting claims against the United States has

failed to identify an applicable waiver of sovereign immunity, the claims must be dismissed.[31]

The State cites 28 U.S.C. § 1367 as jurisdictional grounds for its cross-claims.  Section

1367, however, does not save the State's cross-claim, as that section provides only that

> in any civil action of which the district courts have original
> jurisdiction, the district courts shall have supplemental jurisdiction
> over all other claims that are so related to claims in the action
> within such original jurisdiction that they form part of the same
> case or controversy under Article III of the United States
> Constitution.[32]

While providing federal courts with supplemental subject matter jurisdiction over certain claims,

section 1367 does not constitute a waiver of sovereign immunity by the United States.[33]  The

case cited by the State in support of its attempt to establish jurisdiction is distinguishable from

this case, as it did not involve a cross-claim against the United States.[34]  Further, the fact that the

United States may have waived sovereign immunity for the Nation's claims is irrelevant, as each

claim against the United States must be grounded in a waiver of sovereign immunity.  As the

Supreme Court has explained, "cross-claims against the United States are justiciable only in

---

[29]*High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1181 (10th Cir. 2006).

[30]*United States v. King*, 395 U.S. 1, 4 (1969).

[31]*See Fostvedt v. United States*, 978 F.2d 1201, 1204 (10th Cir. 1991).

[32]28 U.S.C. § 1367(a).

[33]*See San Juan Co., Utah v. United States,* 503 F.3d 1163, 1181 (10th Cir.2007) ( "Section 1367(a) is expressed in general terms, applying to all litigants. There is no mention of sovereign immunity or of the special status of the government as a litigant. Under settled law, . . . this statute does not waive federal sovereign immunity."); *Dunn & Black v. United States,* 492 F.3d 1084, 1088 n. 3 (9th Cir.2007) (same); *United States v. Certain Land Situated in City of Detroit,* 361 F.3d 305, 307 (6th Cir.2004) (same); *Boritz v. United States*, 685 F. Supp. 2d 113, 122 (D. D.C. 2010) (same).

[34]*See Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 741, 754 (S.D.N.Y. 2011).

those courts where Congress has consented to their consideration."[35]  The State has failed to identify such consent in this case.

### Standing

Even assuming a waiver of sovereign immunity, the State's cross-claims lack Article III standing because the State does not allege a concrete and particularized injury-in-fact.  The State asserts that its claims against the Secretary were asserted prophylactically, in response to the Nation's interjection of the merits of PL 602 into this case, and that dismissal of its cross-claims would "irretrievably impair" the State's rights "if this Court proceeds to address the substantive merits of the Plaintiff's claims."  Specifically, the State urges that once the Park City Land is acquired into trust, the Quiet Title Act's Indian lands exception preserves the United States' immunity from suit.[36]  Thus, any alleged injury associated with a potential loss of opportunity for judicial review could only occur if the Secretary determines that PL 602 requires that the Park City Land be acquired into trust for the Nation.  As the Secretary notes, however, speculative claims of injury are insufficient for purposes of Article III standing.[37]

Further, the Supreme Court recently issued its opinion in *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,[38] resolving the question of whether suits challenging the United States' acquisition of land in trust for Indian tribes after the United States acquires

---

[35]*United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 512 (1940).

[36]Citing 28 U.S.C. § 2409a; *Gov. of Kan. v. Kempthorne*, 516 F.3d 833, 843 (10th Cir. 2008) (interpreting Quiet Title Act as applying to such actions, thus implicating that Act's preservation of the United States' sovereign immunity for challenges involving Indian lands).

[37]*See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (requiring claimed injury to be "concrete and particularized").

[38]132 S. Ct. 2199 (2012) (abrogating *Neighbors for Rational Dev., Inc. v. Norton*, 379 F.3d 956, 961-61 (10th Cir. 2004)).

title are actions under the APA or the Quiet Title Act.  Under *Patchak*, a plaintiff that is challenging a decision to acquire land in trust, but does not claim a competing interest in the land, can proceed with the lawsuit even after the land is actually acquired or taken into trust,[39] thus removing the one potential harm the State has articulated—the loss of the opportunity for judicial review should the Secretary take the Park City Land intro trust.  Accordingly, because the Secretary's ultimate determination of the Nation's application remains pending, any harm that may inure to the State does not rise to the level of an imminent, concrete and particularized injury-in-fact necessary to establish jurisdiction.

### *Administrative Procedure Act*

Finally, although the lack of subject matter jurisdiction is dispositive, the Court briefly addresses the Secretary's alternative grounds for dismissal.  While the State does not allege the APA as a basis for its cross-claims, it argues that if the Nation's claims under the APA provide this Court with a jurisdictional basis to reach the merits of the Nation's claims under PL 602, then the same jurisdictional basis exists with regard to the State's cross-claims.  But the State cannot extrapolate the Nation's inclusion of an APA claim in its Complaint as conferring Article III jurisdiction over its cross-claims against the Secretary.  In order to bring a claim under the APA, "the prospective [cross-claimant] must show that [the] agency action has caused him to suffer 'legal wrong,' or that he is 'adversely affected or aggrieved' by that action."[40]  As the Secretary notes, the State has not demonstrated how it is "suffering legal wrong" or is "adversely affected or aggrieved" by the Secretary's ongoing review of the Nation's application.  As

---

[39]*Id*. at 2205-06.

[40]*W. Shoshone Bus. Council v. Babbitt*, 1 F.3d 1052, 1055 (10th Cir. 1993) (citing *Defenders of Wildlife*, 497 U.S. at 883).

discussed above, the State's claimed harms are based on the presumption that the Secretary will take the Park City Land into trust.

**IT IS THEREFORE ORDERED BY THE COURT** that the Nation and the Secretary's Motions to Dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) (Docs. 45, 47) are GRANTED; the State's counterclaims against the Nation and cross-claims against the Secretary are DISMISSED without prejudice;

**IT IS FURTHER ORDERED BY THE COURT** that within ten (10) days of the date of this Order, the parties shall confer and submit a proposed schedule for resolving the remaining claims in this dispute, including a response or submission by the State as it sees necessary.

**IT IS SO ORDERED.**

**Dated: August 3, 2012**

  **S/ Julie A. Robinson_____**
**JULIE A. ROBINSON**
**UNITED STATES DISTRICT JUDGE**